UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PEDRO CASTILLO,

                              Plaintiff,

                    -against-

C.O. ROBERT C. SNEDEKER, DONALD
VENETTOZZI, C.H.O. KATHERINE
HENLEY,

                              Defendants.

**OPINION AND ORDER**

21-CV-11109 (PMH)

PHILIP M. HALPERN, United States District Judge:

Pedro Castillo ("Plaintiff"), currently incarcerated at Sing Sing Correctional Facility ("Sing Sing"), initiated this action *pro se* and *in forma pauperis* under 42 U.S.C. § 1983 on December 20, 2021.[1] (Doc. 1, "Compl."). Plaintiff maintains that three employees of the New York State Department of Corrections and Community Supervision ("DOCCS")—specifically, C.O. Robert C. Snedeker ("Snedeker"), First Deputy Superintendent Donald Venettozzi ("Venettozzi"), and C.H.O. Katherine Henley ("Henley") (collectively, "Defendants")—violated his constitutional rights under the Eighth and Fourteenth Amendment during his confinement at Green Haven Correctional Facility ("Green Haven") from December 2015 to April 2016. (*See generally* Compl.).

Pending before the Court is Defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. 32). Pursuant to the briefing schedule set by the Court, Defendants

---

[1] Known as the "prison mailbox rule," an inmate's *pro se* complaint is effectively "filed" when delivered to prison officials, in light of the inherent disadvantage suffered by incarcerated *pro se* litigants in their inability to monitor the course of litigation. *Dory v. Ryan*, 999 F.2d 679, 682 (2d Cir. 1993), modified on other grounds, 25 F.3d 81 (2d Cir. 1994). Plaintiff's complaint was delivered to prison officials on December 20, 2021, as indicated in the affidavit of service annexed to the pleading. (Doc. 1 at 7).

filed their memorandum of law in support of their motion to dismiss on July 21, 2023 (Doc. 33, "Mot."). Plaintiff timely opposed the motion on September 29, 2023, in accordance with the extension of time granted by the Court (Doc. 38; Doc. 39, "Opp.").[2]  The motion was fully briefed with the filing of Defendants' reply on October 16, 2023 (Doc. 41, "Reply").[3] On October 30, 2023, the Court declined Defendant's request to file a sur-reply. (Doc. 43).

For the reasons set forth below, Defendants' motion is GRANTED.

## BACKGROUND

Plaintiff alleges that Snedeker filed a false misbehavior report against him at Green Haven on December 17, 2015, and that, as a result, he was placed in Special Housing Unit ("SHU"). (Compl. at 2). Plaintiff was held in SHU at Green Haven and his subsequent correctional facilities, including Upstate Correctional Facility ("Upstate") and Great Meadow Correctional Facility ("Great Meadow"), until April 16, 2016—totaling 120 days of confinement. (*Id.*).  Plaintiff alleges

---

[2] Plaintiff filed a copy of the following documents in connection with his opposition, albeit unsupported by affidavit as required by Local Civil Rule 7.1: (i) December 2015 misbehavior report; (ii) May 2016 letter regarding "restoration of privileges"; (iii) December 2015 disciplinary hearing disposition; (iv) record of Plaintiff's disciplinary history; and (v) record of Plaintiff's commissary account. (Opp. at 12-17). The Court has discretion to overlook a failure to comply with Local Civil Rule 7.1 and exercises such discretion on this motion. *See, e.g.*, *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001); *Fiedler v. Incandela*, 222 F. Supp. 3d 141, 155 (E.D.N.Y. 2016). The Court, on a Rule 12(b)(6) motion, "is entitled to consider facts alleged in the complaint and documents attached to it or incorporated in it by reference, [as well as] documents 'integral' to the complaint and relied upon in it, and facts of which judicial notice may properly be taken . . . ." *Heckman v. Town of Hempstead*, 568 F. App'x 41, 43 (2d Cir. 2014); *Manley v. Utzinger*, No. 10-CV-02210, 2011 WL 2947008, at *1 n.1 (S.D.N.Y. July 21, 2011) (explaining that a court may consider "statements or documents incorporated into the complaint by reference"). The Court may properly consider the inmate misbehavior report and disciplinary hearing disposition as they are explicitly referred to in the Complaint and therefore incorporated by reference. *See James v. Bradley*, 808 F. App'x 1, 3 (2d Cir. 2020). The Court declines to consider the remaining documents attached to Plaintiff's opposition because they are not integral to the Complaint and do not form the basis of Plaintiff's claims at issue on this motion. Nor does the Complaint rely on these documents or are they facts of which the Court may take judicial notice.

[3] Citations to the parties' filings correspond to the pagination generated by ECF.

that this period of confinement in SHU resulted in the onset of psychological and emotional disorders, estrangement from his family, and severe anxiety and panic attacks. (*Id*. at 2-3).

Following the misbehavior report, a disciplinary hearing was conducted at Green Haven wherein Henley found Plaintiff guilty of three rule violations: (1) No. 113.10 concerning weapon; (2) No. 113.11 concerning altered item; and (3) No. 113.23 concerning contraband. (*Id*. at 2). Plaintiff appealed the disciplinary hearing decision, and, on March 30, 2016, the disposition was affirmed by Venettozzi. (*Id*.). Thereafter, Plaintiff filed an Article 78 proceeding which resulted in a new hearing on the rule violations. (*Id*.) At the February 15, 2018 rehearing, Henley found Plaintiff guilty of these same rule violations and affirmed her initial disposition. (*Id*.). Plaintiff filed a second appeal which resulted in another affirmance by Venettozzi. (*Id*.). Thereafter, Plaintiff filed a second Article 78 proceeding. (*Id*. at 3). On February 27, 2019, Plaintiff was informed that the disciplinary hearing disposition rendered on February 15, 2018 had been administratively reversed. (*Id*.; *see Castillo v. Annucci*, 173 A.D.3d 1588, 101 N.Y.S.3d 668 (3d Dept. 2019)). Thereafter, this action ensued.

## STANDARD OF REVIEW

I.    Federal Rule of Civil Procedure 12(b)(6)

A Rule 12(b)(6) motion enables a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).[4] A claim is plausible on its face "when the plaintiff pleads

---

[4] Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes, and alterations.

factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (citing *Twombly*, 550 U.S. at 556). The factual allegations pled "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"When there are well-ple[d] factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. Thus, the Court must "take all well-ple[d] factual allegations as true, and all reasonable inferences are drawn and viewed in a light most favorable to the plaintiff." *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996). The presumption of truth, however, "'is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678 (alteration in original)). Therefore, a plaintiff must provide "more than labels and conclusions" to show entitlement to relief. *Twombly*, 550 U.S. at 555.

A complaint submitted by a *pro se* plaintiff, "however inartfully ple[d], must be held to less stringent standards than formal pleadings drafted by lawyers . . . ." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (internal quotation marks omitted). Because *pro se* plaintiffs "'are often unfamiliar with the formalities of pleading requirements,' courts must 'apply a more flexible standard in determining the sufficiency of a *pro se* [complaint] than they would in reviewing a pleading submitted by counsel.'" *Smith v. U.S. Dep't of Just.*, 218 F. Supp. 2d 357, 361 (W.D.N.Y. 2002) (quoting *Platsky v. Cent. Intell. Agency*, 953 F.2d 26, 28 (2d Cir. 1991)). However, while "[*p*]*ro se* complaints are held to less stringent standards than those drafted by lawyers, even following *Twombly* and *Iqbal*," dismissal is "appropriate where a plaintiff has clearly failed to

meet minimum pleading requirements." *Thomas v. Westchester Cty.*, No. 12-CV-06718, 2013 WL 3357171, at *2 (S.D.N.Y. July 3, 2013) (internal citations omitted); *see also Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) ("Even in a *pro se* case . . . although a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." (internal quotation marks omitted)). Therefore, while the Court must "draw the most favorable inferences that [a plaintiff's] complaint supports, [it] cannot invent factual allegations that [a plaintiff] has not pled." *Chappius*, 618 F.3d at 170. The Court does, however, have a duty to interpret "the pleadings of a *pro se* plaintiff liberally and interpret them 'to raise the strongest arguments that they suggest.'" *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).

## ANALYSIS

Plaintiff proceeds under 42 U.S.C. § 1983. That law provides, in pertinent part, that "[e]very person who, under color of any statute . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ." 42 U.S.C. § 1983. "[T]his language does not create substantive rights; rather, it creates a mechanism by which individuals can vindicate the violation of rights secured elsewhere." *Linares v. Annucci*, No. 19-CV-11120, 2021 WL 2689736, at *6 (S.D.N.Y. June 30, 2021) (quoting *Santucci v. Levine*, No. 17-CV-10204, 2021 WL 76337, at *3 (S.D.N.Y. Jan. 8, 2021) (alteration in original)). Plaintiff maintains, through this mechanism, that Defendants: (1) violated his Fourteenth Amendment rights in connection with the false misbehavior report and subsequent disciplinary hearings; and (2) violated his Eighth Amendment rights based on the conditions of his confinement.

I. Fourteenth Amendment Due Process Claims

The Court construes the Complaint to raise Fourteenth Amendment procedural due process claims based on the following conduct which resulted in Plaintiff being sent to SHU: (i) Snedeker's issuance of an allegedly false misbehavior report; (ii) Henley's guilty determination at the disciplinary hearings; and (iii) Venettozzi's affirmance of the guilty determinations. (*See generally* Compl.) The Court considers these arguments *seriatim*.

A. Defendant Snedeker

Defendants argue that Plaintiff's claim against Snedeker regarding the allegedly false misbehavior report must be dismissed because: (i) Plaintiff was able to argue the falsehood of the report at the hearing and therefore not deprived of any due process; and (ii) Plaintiff does not allege that Snedeker was motivated by retaliation. (Reply at 3).

"[A] prison inmate has no general constitutional right to be free from being falsely accused in a misbehavior report." *Boddie v. Schneider*, 105 F.3d 857, 862 (2d Cir. 1997). "Instead, to maintain a cognizable claim against correction officers for filing a false misbehavior report, 'a plaintiff must be able to show either: (1) that he was disciplined without adequate [procedural] due process, as a result of the report; or (2) that the report was issued in retaliation for exercising a constitutionally protected right.'" *Louime v. Lamanna*, No. 21-CV-09594, 2023 WL 1385180, at *6 (S.D.N.Y. Jan. 31, 2023) (citing *Allen v. City of N.Y.*, 480 F. Supp. 2d 689, 721 (S.D.N.Y. 2007)).

Plaintiff alleges that Snedeker fabricated a false misbehavior report against him on December 17, 2015, and that he challenged the report at a disciplinary hearing but was ultimately sentenced to 120 days in SHU. (Compl. at 2). For the reasons discussed *infra*, the Court finds that Plaintiff was not denied due process as a result of the misbehavior report. Nor has Plaintiff made

6

any allegation that Snedeker's issuance of a false misbehavior report was done in retaliation for Plaintiff's exercise of a constitutionally protected right. While Plaintiff adds, by way of his opposition, the allegation that Snedeker whispered in his ear "I will make you pass some hard time," he does not allege facts from which the Court can infer that he had engaged in any kind of protected conduct prior to receiving the report. (Opp. ¶ 4); s*ee Louime*, 2023 WL 1385180, at *9 (dismissing claims based on the issuance of allegedly false misbehavior reports where "plaintiff's factual allegations do not support a reasonable inference that the reports were issued in retaliation because he does not allege he engaged in any kind of protected conduct before they were issued.") Additionally, Plaintiff's conclusory allegations that Snedeker had "deliberate ill intentions" and intended to send him to SHU are not supported by any factual basis and therefore do not constitute a constitutional violation. (*Id*. ¶ 7); *see Louime*, 2023 WL 1385180, at *9. If Plaintiff were to identify some prior protected conduct that Snedeker sought retaliation for, such allegations may be sufficient to allege a constitutional violation based on the false misbehavior report.

On the instant Motion, Plaintiff fails to state a claim based on Snedeker's allegedly false misbehavior report. *See i.e., Chavez v. Gutwein*, No. 20-CV-00342, 2021 WL 4248917, at *6 (S.D.N.Y. Sept. 17, 2021). Accordingly, Plaintiff's claim against Snedeker is dismissed without prejudice.

B. Defendant Henley

As discussed, Henley found Plaintiff guilty of rules violations at two disciplinary hearings regarding the misbehavior report which led to his 120-day sentence in SHU. Defendants argue that Plaintiff fails to allege any procedural due process violations in connection with the disciplinary hearings. (Mot. at 7-8).

The Fourteenth Amendment provides, in pertinent part, that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law . . . ." U.S. Const. amend. XIV § 1. "[T]o present a [procedural] due process claim, a plaintiff must establish (1) that he possessed a liberty interest and (2) that the defendant(s) deprived him of that interest as a result of insufficient process." *Arriaga v. Otaiza*, No. 20-CV-06992, 2021 WL 5449849, at *6 (S.D.N.Y. Nov. 19, 2021) (quoting *Joseph v. Cuomo*, No. 20-CV-03957, 2021 WL 200984, at *6 (E.D.N.Y. Jan. 20, 2021) (alterations in original)); *see also Velazquez v. Gerbing*, No. 18-CV-08800, 2020 WL 777907, at *9 (S.D.N.Y. Feb. 18, 2020).

As to the second element, Plaintiff's allegations establish that he received all the process that was due. As regards procedural due process afforded to a prisoner with respect to disciplinary hearings, an inmate should receive: "(1) advance written notice of the charges against him to enable him to marshal the facts and prepare a defense; (2) the opportunity to call witnesses and present documentary evidence in his defense, when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals; and (3) a short written statement presenting the reasons and evidence supporting any disciplinary action ultimately taken." *Amaker v. Coombe*, No. 96-CV-01622, 2002 WL 523388, at *9 (S.D.N.Y. Mar. 29, 2002) (citing *Wolff v. McDonnell*, 418 U.S. 539, 563-67 (1974)). "Prison disciplinary proceedings," however, "are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceeding does not apply."

8

*Smith v. Fischer*, 803 F.3d 124, 127 (2d Cir. 2015) (quoting *Wolff*, 418 U.S. at 556). The requirements of due process are satisfied if "some evidence" supports the conclusion of the disciplinary hearing. *Superintendent v. Hill*, 472 U.S. 445, 455 (1985); *see also Jackson v. Annucci*, No. 20-CV-02008, 2021 WL 2581340, at *10 (S.D.N.Y. June 23, 2021) (finding that inmate was afforded due process at disciplinary hearing where there was "certainly 'some evidence'" to support guilty determination).

Here, Plaintiff confirms that he was provided written notice of the charges against him prior to the disciplinary hearing.[5] (Opp. ¶ 14). Plaintiff also confirms, by attaching the document to his opposition, that he received a written copy of the disciplinary hearing disposition. (*Id*. at 15). Liberally construed, Plaintiff raises through his opposition two procedural due process violations: (i) Henley denied Plaintiff the opportunity to have C.O. Rodriguez testify as a witness at the hearing; and (ii) Henley was not a fair and impartial hearing officer because of her alleged conspiracy with Snedeker.[6] (Opp. ¶¶ 10-14).

"[I]nmates are entitled to a reasonable opportunity to call witnesses. This right is qualified, however, as [p]rison officials must have the necessary discretion to keep the hearing within

___

[5] Specifically, Plaintiff states that he was served with an unsigned version of the misbehavior report and that the proceeding was postponed until after Plaintiff was re-served with a signed version of the misbehavior report. (Opp. ¶ 14).

[6] Given the liberality afforded *pro se* litigants, it is appropriate to consider new allegations in a *pro se* plaintiff's opposition to a motion to dismiss where they are consistent with the allegations contained in the pleading. *Vail v. City of New York*, 68 F. Supp. 3d 412, 427 (S.D.N.Y. 2014) ("Where new allegations in a pro se plaintiff's opposition memoranda 'are consistent with the allegations contained' in the Complaint, they may be read 'as supplements to th[e] pleadings . . . .'") (quoting *Boyer v. Channel 13, Inc.*, No. 04-CV-02137, 2005 WL 2249782, at *6 (S.D.N.Y. Mar. 9, 2005)); *see also Davis v. Cty. of Suffolk*, No. 18-CV-00303, 2020 WL 7699919, at *4 (E.D.N.Y. Oct. 30, 2020) ("[I]n deciding a motion to dismiss a pro se complaint, it is appropriate to consider materials outside the complaint to the extent that they are consistent with the allegations in the complaint, including documents that a pro se litigant attaches to his opposition papers." (internal citations and quotation marks omitted)), *adopted by* 2020 WL 7041082 (E.D.N.Y. Dec. 1, 2020). Accordingly, the Court considers on this motion the additional allegations in Plaintiff's opposition.

reasonable limits and to refuse to call witnesses that may create a risk of reprisal or undermine authority, as well as to limit access to other inmates to collect statements or to compile other documentary evidence." *Chavez*, 2021 WL 4248917, at *9 (citing *Wolff*, 418 U.S. at 566). "This right can be denied on the basis of irrelevance or lack of necessity." *Id.* (citing *Jackson v. Prack*, No. 16-CV-07561, 2019 WL 6119010, at *7 (S.D.N.Y. Nov. 18, 2019)). Here, Plaintiff's own allegations make clear that C.O. Rodriguez, who was no longer employed at Green Haven at the time of the hearing, refused to testify at the hearing, not that Henley denied her the opportunity to testify. (Opp. ¶ 10). Plaintiff claims that his due process rights were violated because he did not receive a refusal form or any documentation supporting C.O. Rodriguez's refusal to testify. (*Id.*). "However, due process does not require a plaintiff to be provided copies of witness refusal forms or that a hearing officer inquire into witnesses' reasons for refusing to testify." *Louime*, 2023 WL 1385180, at *7 (citing *Martinez v. Minogue*, 2008 WL 4241746, at *6 (N.D.N.Y. Sept. 11, 2008)). Accordingly, even accepting Plaintiff's allegations as true, C.O. Rodriguez's refusal to testify does not constitute a due process violation.[7]

Plaintiff also argues that Henley was not an impartial decisionmaker by suggesting that she conspired with Snedeker to find him guilty. Specifically, Plaintiff asserts that Henley, *inter alia*, "was in cohoot with C.O. Snedeker," "knew that C.O. Snedeker had a plan to set up the Plaintiff," and "decided to ignore the evidences showing that the charges were false." (Opp. ¶¶ 10-12). Aside from these conclusory statements, Plaintiff does not provide any factual basis supporting a conspiracy between Snedeker and Henley. *See Boddie v. Schneider*, 105 F.3d 857, 862 (2d Cir.

---

[7] Plaintiff also makes vague references in his opposition to the fact that he was denied the opportunity to call "Inmate Cheverez" as a witness and denied "vital documents requested at the hearing." (Opp. ¶ 15). However, these allegations are vague and conclusory, and not supported by any factual predicate. Accordingly, these statements are likewise insufficient to constitute a violation of due process.

1997) (dismissing claim based on false misbehavior report where allegations of conspiracy to retaliate against inmate were "unsupported, speculative, and conclusory"). Nor does Plaintiff specify any evidence that Henley intentionally disregarded that would support his conspiracy argument.[8]

Accordingly, the Court need not reach the first element—whether Plaintiff's sentence of 120 days in SHU constitutes a deprivation of a liberty interest—because Plaintiff fails to allege that he received insufficient process in connection with the disciplinary hearings. Plaintiff's claim asserted against Henley is, accordingly, dismissed.

C.  Defendant Venettozzi

Plaintiff also alleges that Venettozzi violated his due process rights by affirming Henley's guilty determinations at the disciplinary hearings. (Compl. at 3). As discussed *supra*, personal involvement is necessary to establish liability under § 1983. "There has been a long-running split in the Second Circuit as to 'whether an allegation that a defendant affirmed a disciplinary proceeding is sufficient to establish' that defendant's personal involvement in the underlying constitutional violation." *Chavez*, 2021 WL 4248917, at *14. However, the Court need not determine personal involvement here. Plaintiff cannot maintain his claim against Venettozzi because he failed to establish an underlying constitutional violation with respect to his disciplinary hearings. *Id.* ("[G]iven the absence of any underlying constitutional violation at Plaintiff's disciplinary hearing to begin with, Plaintiff cannot maintain a cause of action against Defendant Venettozzi based on his affirmance of [the hearing officer's] determination.").

---

[8] Plaintiff's contention that Henley found him guilty despite the fact that "it was established that the charges were false," is unsupported by any factual basis. (Opp. ¶ 9). Plaintiff does not identify any specific evidence that Henley "ignore[d]" at the hearing which established falsity of the charges or would have warranted a different disposition.

Accordingly, Plaintiff's claim against Venettozzi is dismissed.

II.    Eighth Amendment Conditions of Confinement Claim

Plaintiff advances through his opposition an Eighth Amendment claim based on the conditions of his confinement in SHU. (Opp. ¶¶ 5, 7-8, 20). Defendants argue that Plaintiff failed to state an Eighth Amendment claim with respect because he failed to allege personal involvement of a named defendant or any specific condition that constituted a violation. (Reply at 4). The Court agrees.

The Eighth Amendment instructs that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. The Supreme Court has explained that the Eighth Amendment requires that prison officials "provide humane conditions of confinement," which include making sure "that inmates receive adequate food, clothing, shelter, and medical care, and . . . tak[ing] reasonable measures to guarantee the safety of inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (internal quotation marks omitted). To state a claim for relief where, as here, liability is based on a theory that "the conditions of . . . confinement constitute[d] cruel and unusual punishment, the plaintiff must satisfy both an objective test and a subjective test." *Jolly v. Coughlin*, 76 F.3d 468, 480 (2d Cir. 1996) (citation omitted).

Of course, "[t]o establish a § 1983 claim, a plaintiff must show the defendants' personal involvement in the alleged constitutional violation." *Boley v. Durets*, 687 F. App'x 40, 41 (2d Cir. 2017) (citing *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994)). Failing to allege that a defendant was personally involved in, or responsible for, the conduct complained of renders a complaint "fatally defective on its face." *Alfaro Motors, Inc. v. Ward*, 814 F.2d 883, 886 (2d Cir. 1987) (internal quotation marks omitted). Here, Plaintiff alleges that Defendants' actions caused him to

be sentenced to 120 days in SHU. (Opp. ¶ 20, "As a result of Defendants' failure the Plaintiff served four months in SHU . . . ."). However, Plaintiff does not make any allegation in his complaint or opposition that Defendants were personally involved in his conditions of confinement. Plaintiff does not even allege that any Defendant was aware of his conditions of confinement in SHU. Plaintiff's Eighth Amendment claim must, consequently, be dismissed as alleged against them.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED.[9]

The Court grants the motion to dismiss Plaintiff's claim against Snedeker regarding the allegedly false misbehavior report <u>without</u> prejudice. *See Terry v. Inc. Vill. of Patchogue*, 826 F.3d 631, 633 (2d Cir. 2016) (explaining that "district judges should, as a general matter, liberally permit pro se litigants to amend their pleadings" unless "amendment would be futile"). The Court will permit Plaintiff to file a first amended complaint, provided that it is filed within thirty days of the date of this Memorandum Opinion and Order. Plaintiff should include within that first amended complaint all changes to correct the deficiencies identified herein that Plaintiff wishes the Court to consider with respect to the false misbehavior report claim against Snedeker; and no other amendments. Plaintiff is advised that the first amended complaint will replace, not supplement, the Complaint. Thus, the first amended complaint must contain all of the claims, factual allegations, and exhibits that Plaintiff wishes the Court to consider. If Plaintiff fails to abide by the thirty-day deadline, or amends the pleading in a manner not permitted by this Memorandum Opinion and Order, his claims dismissed without prejudice will be dismissed with prejudice.

---

[9] Given the conclusions reached herein, the Court need not and does not reach Defendants' alternate argument regarding qualified immunity. (Mot. at 8-10).

The Court grants the motion to dismiss Plaintiff's Fourteenth Amendment due process claims against Henley and Venettozzi and Plaintiff's Eighth Amendment unconstitutional conditions of confinement claim <u>with</u> prejudice. While "[d]istrict courts should frequently provide leave to amend before dismissing a *pro se* complaint . . . leave to amend is not necessary when it would be futile." *Reed v. Friedman Mgmt. Corp.*, 541 F. App'x 40, 41 (2d Cir. 2013) (citing *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000)). In this case, Plaintiff's Fourteenth Amendment due process claims against Henley and Venettozzi and Eighth Amendment unconstitutional conditions of confinement claim are dismissed with prejudice because any amendment would be futile.

The Clerk of the Court is respectfully directed to terminate the motion sequence pending at Doc. 32, mail a copy of this Opinion and Order to Plaintiff, and close this case.

**SO ORDERED:**

Dated:    White Plains, New York
          November 9, 2023

_____
PHILIP M. HALPERN
United States District Judge

14